ROBERT G. PEOPLES, APPELLANT, v. WARDEN, NEVADA STATE PRISON, RESPONDENT.

No. 6525

December 15, 1971                    491 P.2d 719

*Gary A. Sheerin,* of Carson City, for Appellant.

*Robert List,* Attorney General, and *William P. Beko,* District Attorney, Nye County, for Respondent.

# OPINION

By the Court, MOWBRAY, J.:

Petitioner Peoples has appealed from an order of the Fifth Judicial District Court denying his petition for post-conviction relief, which order we affirm.

Peoples was tried to a jury and convicted of first-degree murder. The conviction was affirmed on direct appeal to this court. Peoples v. State, 83 Nev. 115, 423 P.2d 883 (1967).

Peoples then sought relief in the federal courts. He filed a petition for habeas relief in the United States District Court for the District of Nevada. That petition was denied. Peoples appealed from that order of denial to the United States Ninth Circuit Court of Appeals. The Ninth Circuit denied his application for habeas and affirmed the order of the United States District Court. See Peoples v. Hocker, 423 F.2d 960 (9th Cir. 1970).

Peoples returned to the state courts and filed a state application for post-conviction relief. The district judge of the Fifth Judicial District Court denied that petition, and Peoples has now appealed to this court seeking relief.

The principal predicate upon which Peoples seeks relief in his present petition is his claim that there is insufficient evidence in the record to support the jury's verdict. We do not agree. The United States District Court, in denying Peoples' petition for habeas, ruled on this precise point and found the record sufficient to support the verdict. The United States Court of Appeals affirmed the Federal District Court. Peoples v. Hocker, *supra*. The Ninth Circuit Court, in reviewing the facts as reflected in the record of the trial proceedings, said:

". . . On June 10, 1965 Peoples arrived in Beatty, Nevada and was met by one Dillard R. Morton and the two children of Sharon Wilson, the decedent. Peoples was driven to the El Portal Motel where he left his luggage in the room occupied by Sharon Wilson. Peoples, Morton and the children then drove to the Oasis Bar where Sharon was employed. While Peoples was talking with her in the bar a pistol which he was carrying was discharged through his pocket and the bullet struck the floor near Sharon. Peoples then ushered the girl and her two children into Morton's car and they returned to the motel. In

the bar, Peoples was overheard threatening Sharon by saying that he was going to kill her. At the motel, Peoples, Morton and Sharon were alone in a room. A shot was fired which passed through Sharon's shoulder, crossed her chest cavity piercing her heart, and came out on the right side of her body. Peoples and Morton carried her out to Morton's car where she was wedged between the front and back seats of the car. Her two children were put in the front seat and the car was driven back to the Oasis Bar. As it arrived behind the Oasis the occupants were approached by a deputy sheriff who was investigating the shot that had been fired inside the bar. When the deputy had questioned Peoples and Morton about the earlier shot, he looked inside the car and saw the woman in the back and an automatic pistol on the front floor. The children were still seated in the front seat.

"Peoples and Morton were both charged with first degree murder. They contended that Sharon had committed suicide and that they had put her in the car with the intent of securing medical attention. However they drove toward the bar and away from the local medical center. The prosecution argued that Peoples, who had threatened Sharon's life on previous occasions, had killed her. Peoples was convicted."

It is clear that there is sufficient evidence in the record to support the jury's verdict.

Peoples has asserted other specifications of error in his present petition that we find equally meritless. Finally, he argues, as he did before the Ninth Circuit Court, that even if the individual allegations of error are insufficient to support his petition for post-conviction relief, the aggregate of all of them amounts to a denial of due process. We do not agree, for, as the Ninth Circuit Court ruled, ". . . [T]he things of which Peoples complains were not errors at all, let alone errors of constitutional magnitude."[1]

We find no merit in Peoples' appeal, and we therefore deny his petition and affirm the order of the district court.

BATJER and THOMPSON, JJ., and BARRETT, D. J., concur.

---

[1]Peoples has failed to comply with the mandate of NRS 177.375, which provides:

"All grounds for post-conviction relief available to a petitioner must be raised in his original, supplemental or amended petition. Any ground not so raised or finally adjudicated or knowingly and understandingly waived in the proceedings resulting in the conviction or sentence or in any other proceeding that the petitioner has taken to secure relief from his conviction or sentence may not be the basis for a subsequent petition, unless the court finds a ground for relief asserted which for reasonable cause was omitted or inadequately raised in the original,

ZENOFF, C. J., dissenting:

We are bound by the record and what it reflects. An objective examination of it must lead to the conclusion that the penalty of life imprisonment without possibility of parole is not justified. Perhaps, this court should again find a reason to undo an injustice such as it claimed to do in Price v. Sinnott, 85 Nev. 600, 460 P.2d 837 (1969), for in this case respected members of our profession have examined the transcript and have agreed that Peoples is serving a sentence for a premeditation that is not at all established in the record.

For instance, the Honorable Bruce Thompson of the United States District Court, at Reno, Nevada, pointedly stated when the matter was before him that an injustice has been done in this case. "The theory of the state," he said, "that petitioner deliberately shot and murdered the victim strains credulity . . . The record is barren of evidence of any motive for a deliberate homicide. Proof of the victim's suicidal tendencies is uncontradicted."

That respected jurist added, "That the prior felony records of Peoples and his co-defendant, Morton, while they cast doubt upon the credibility of their testimony, undoubtedly influenced the jury to draw all possible inferences in support of a finding of guilt." The fact that Morton, who was charged with holding the victim while Peoples shot her, was permitted to plead guilty to involuntary manslaughter, is without a doubt of significance.

As Judge Thompson stated, the police work on the case was not the best, also, there is a complete absence of any motive for Peoples to shoot the girl. His anger at her earlier was directed to her own drinking.

An incident took place in a Beatty bar prior to their retiring to a motel room which involved the shooting of the gun by Peoples. If he intended to shoot her, he could have done so because they were within a few feet of each other. He claimed that the firing of the weapon was accidental. The explanation of his possession of the gun was reasonable, i.e., he had picked it up for a friend who had forgotten it at the Oasis Bar in Beatty and was returning it to the friend who was a real estate woman in Santa Barbara, California. This was corroborated by the woman.[1]

---

supplemental or amended petition." See also Mr. Justice Zenoff's concurring opinion in Nall v. Warden, 86 Nev. 489, 491, 471 P.2d 218, 219 (1970); and Craig v. Warden, 87 Nev. 39, 482 P.2d 325 (1971).

[1]At trial, she testified that the gun was hair trigger. Later, investigation disclosed that it was not.

My point is simply that the record does not support a penalty of life imprisonment without possibility of parole. The facts are that while Peoples, Morton and the victim were in the motel room in Beatty a shot rang out as Morton stepped from the bathroom. He did not see the actual shooting. Peoples' explanation was that the girl grabbed for the gun which was on a table nearby intending to shoot herself and that he grappled with her for the gun which went off, fatally wounding her. At that point they could have run and left the victim dying. Instead, they took her with the children to the bar to seek a doctor. Indeed, there are facts to show that Morton at least knew of a registered nurse in the town nearby to the motel but for some unexplained reason they first sought a doctor. While the victim was lying in the car she died.

On the facts as they were presented, the deliberateness and malice aforethought that is required of first degree murder cannot be found. The difference is, of course, that a lesser degree means a lesser penalty.

Perhaps, this is more properly a case for the Board of Pardons. That body has refused to act until the legal avenues have been exhausted, but, nevertheless, I now, as previously, desire that my views be known.

Under our powers provided by NRS 177.265, I would modify the judgment to life with possibility of parole.